State v. Adams

STATE OF NORTH CAROLINA v. JERRY WAYNE ADAMS AND LISA DIANE JACKSON ADAMS

No. 7912SC971

(Filed 1 April 1980)

1. **Burglary and Unlawful Breakings § 5.8— breaking and entering and larceny—possession of recently stolen property—sufficiency of evidence**

    The State's evidence was sufficient to support conviction of the male defendant for breaking and entering a home and larceny of guns therefrom where it tended to show that the home was broken into and a large number of guns were taken therefrom without authority of the owner; on the night of the break-in the male defendant had these guns in his possession and traded them for heroin; prior to the break-in such defendant had an opportunity to know both that the guns were in the home and that their owner was absent; early in the evening on the date of the break-in defendant asked a drug dealer if he wanted to buy some guns later that night; and when defendant traded the guns he told the drug dealer "he had gotten the guns out of a house in Grays Creek" but that the dealer "didn't have anything to worry about because the man was out of town." However, the State's evidence was insufficient to support conviction of the female defendant for breaking and entering and larceny where it tended to show that she accompanied the male defendant, her husband, when he first inquired whether the drug dealer wanted to buy some guns later that night; she thereafter accompanied her husband and brother when they brought the guns to the drug dealer's home; she was present while her husband negotiated the trade of the guns for heroin; and during those negotiations she picked up two or three of the guns and at one point remarked that one of the guns looked like it was very old and "ought to be worth a lot of money."

2. **Criminal Law § 97.1— permitting recall of witness—discretion of court**

    Permitting a witness to be recalled and testify, although his later testimony might be contradictory to that previously given, is a matter within the sound discretion of the trial judge and is not reviewable upon appeal absent a showing of abuse of discretion.

APPEAL by defendants from *Brewer, Judge.* Judgments entered 24 May 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 6 March 1980.

The defendants, Jerry Wayne Adams and his wife, Lisa Diane Jackson Adams, were each charged by indictment with the felonious breaking and entering of the home of James Lovette and with the felonious larceny therefrom of a large number of specifically described rifles and shotguns. The cases were consolidated for trial and each defendant pled not guilty.

The State presented evidence to show: On the night of 25 November 1978 the home of James Lovette, a gun collector, was broken into while Lovette and his family were away on a trip to Mississippi, and a large number of rifles and shotguns were taken. On 27 November 1978 these guns, identified by Lovette as having been taken from his house, were found in the home of one Kenny Nixon when it was being searched by officers pursuant to a search warrant following Nixon's arrest for possession and sale of heroin. Nixon, called as a witness for the State, testified in substance to the following:

At approximately 6:00 p.m. on 25 November 1978 the defendant, Jerry Adams, came to Nixon's home, driving a red automobile. Jerry's wife, the defendant Lisa Adams, was with him but did not get out of the car. Jerry asked Nixon if he wanted "to buy some guns later on that night, that he was going to get some." Nixon replied that he would have to see them first, whereupon Jerry said that he would see Nixon later, and Jerry left. Later that night, Nixon responded to a knock at the door to find Jerry on the porch. He had arrived in the same red car. Lisa Adams and Donald Jackson (later identified as Lisa's brother) were in the car. Jerry told Nixon that he had fifteen to twenty guns which he wanted him to look at to see if he would buy, and Nixon told him to bring them on in. Lisa Adams came in the house, while Jerry Adams and Donald Jackson went to the "boot" of the car and got the guns out. These were wrapped in a blanket, and it took both Jerry and Donald to carry them. Lisa opened the door so that they could get in. Jerry and Donald brought the guns in, placed them on the floor, and opened the blanket. Lisa was sitting in the living room, talking to Nixon's sister.

Nixon testified:

After we opened the blanket and began looking at the guns, everybody—my sister and Jerry, Donald, my wife and me, all looked at the guns and was seeing how funny the guns looked and everything. There were some strange looking guns in there I hadn't seen before. All three of them, Jerry, Lisa and Donald, were showing the guns to us. Jerry picked up about all of the guns. Lisa Adams picked up two or three of the guns. She picked up a little small .22 that was—looked like it was about a hundred years old and she was showing that to us, saying that it ought to be worth a lot of money.

. . . Jerry Adams told me that the guns had come from Grays Creek. Grays Creek is on the outskirts of Fayetteville. He told me I didn't have anything to worry about because the man was out of town. Jerry Adams told me that. He did not say what man, he just said he knew the man was out of town and wouldn't be back for a while. Jerry did not say anything about the job they had done, he just said they had got the guns out of a house. He just said a house in Grays Creek.

After he told me he had gotten the guns out of a house in Grays Creek, I told him I would take the guns but I didn't have any money to give him. I told him I would trade him heroin for them. He wanted approximately two hundred dollars. He had about 15 to 20 guns. We were all standing right in a circle looking at the guns. When I told Jerry that I had no money but I had heroin, he and Donald discussed it for a minute and decided to take it. Lisa was standing there looking at the guns. After they discussed it between themselves they said they would take my deal I'd offered them. I told them I'd give a quarter teaspoon of heroin for it. A quarter teaspoon of heroin would be handed in a plastic bag corner [sic]. The value of a quarter teaspoon of heroin is about a hundred and seventy-five to two hundred dollars. I handed the heroin to Jerry Adams. He put it in his pocket and they all three left, Jerry, Donald and Lisa . . . .

\*     \*     \*

It was after 12 o'clock, I believe, when Jerry Adams and Donald Jackson and Lisa Adams left my house that evening.

Lovette, on being recalled to the stand, testified that on one occasion prior to the break-in, Jerry Adams had been in Lovette's home when he came there to pick up a car to be serviced at the Local Auto Parts Store where Jerry Adams worked. At that time Lovette's guns were displayed over the doors and at various places in his living room. Just prior to leaving on the trip to Mississippi, Lovette took his car to be serviced at the shop where Jerry Adams worked. While there, Lovette told the shop foreman in Jerry Adams's presence that he had to leave that afternoon to go to Mississippi for an emergency.

The defendants testified and denied that they had been to the Lovette house or to the Nixon house on the night of 25 November 1978 and presented evidence to establish an alibi.

The jury found both defendants guilty as charged. Judgments were entered imposing an active prison sentence on the defendant Jerry Wayne Adams and imposing a suspended sentence on the defendant Lisa Diane Jackson Adams. Both defendants appealed.

*Attorney General Edmisten by Special Deputy Attorney General W. A. Raney, Jr. for the State.*

*McCrae, McCrae, Perry & Pechmann by Daniel T. Perry III for the appellants.*

PARKER, Judge.

[1] Defendants assign error to the denial of their motions made pursuant to G.S. 15A-1227 to dismiss the charges against them for insufficiency of the evidence to sustain the convictions. We find the evidence sufficient to sustain the convictions of the defendant Jerry Wayne Adams, but insufficient to sustain the convictions of the defendant Lisa Diane Jackson Adams.

There was uncontradicted evidence that the Lovette home was broken into and a large number of guns were taken therefrom by someone without authority of the owner. There was evidence that on the same night the break-in occurred the defendant Jerry Adams had these guns in his possession and traded them for heroin. Standing alone, the evidence showing Jerry Adams's possession of the stolen property so soon after the theft as to render it unlikely that he could have acquired the property

honestly would give rise to a reasonable inference that he was guilty both of the larceny and of the breaking and entering by which the larceny was accomplished. *State v. Jackson,* 274 N.C. 594, 164 S.E. 2d 369 (1968); *State v. Blackmon,* 6 N.C. App. 66, 169 S.E. 2d 472 (1969). This inference was strengthened in the present case by the evidence that prior to the break-in Jerry Adams had had opportunity to know both that the guns were in the Lovette house and that their owner would be absent, that early in the evening on the date of the break-in he asked the drug dealer if he wanted "to buy some guns later on that night, that he was going to get some," and that when he traded the guns he told the drug dealer "he had gotten the guns out of a house in Grays Creek" but that the drug dealer "didn't have anything to worry about because the man was out of town." Thus, there was ample evidence to sustain the convictions of Jerry Adams, and his motions challenging the sufficiency of the evidence was properly denied.

The evidence against the defendant Lisa Adams was quite different. All that the evidence shows against her is that she accompanied her husband when he first approached the drug dealer and inquired if the dealer wanted to buy some guns later that night (though it is not clear from the evidence in the record whether she was then so situated as to have been able to hear that conversation), that later that night she accompanied her husband and brother when they brought the guns to the drug dealer's home, that she was present while her husband negotiated the trade of the guns for heroin, and that during those negotiations she picked up "two or three of the guns" and at one point remarked that one of the guns looked like it was very old and "ought to be worth a lot of money." While this evidence strongly suggests that Lisa Adams may have known that the guns had been stolen, in our opinion it falls short of supporting an inference that she was the thief. Her motion for dismissal should have been allowed.

[2]　We find no merit in the contention of the defendant Jerry Adams that the court erred in permitting the State, over his objection, to recall the witness James Lovette after he had already testified on direct examination, cross-examination and re-direct examination. Permitting a witness to be recalled and testify, although his later testimony might be contradictory to that

previously given, is a matter within the sound discretion of the trial judge and is not reviewable upon appeal absent a showing of abuse of discretion. *Hunter v. Sherron,* 176 N.C. 226, 97 S.E. 5 (1918); 1 Stansbury's N.C. Evidence (Brandis Rev.) § 24. No abuse of discretion has been here shown.

The result is:

On the appeal of the defendant Jerry Wayne Adams, we find

No error.

On the appeal of the defendant Lisa Diane Jackson Adams,

Judgment reversed.

Judges MARTIN (Harry C.) and HILL concur.