STATE OF NORTH CAROLINA v. JOHN RICHARD MITCHELL

No. 8221SC965

(Filed 3 May 1983)

1. **Automobiles and Other Vehicles § 111— sufficiency of evidence that defendant's act proximate cause of victim's death**

     Where two doctors testified that the head injury a victim sustained when defendant's car drove into a store and hit the victim contributed to and led to the victim's death, the State presented sufficient evidence to show that defendant's actions were a proximate cause of the girl's death even though another doctor testified that the sole cause of the victim's death was the negligence of the attending doctor.

2. **Automobiles and Other Vehicles § 111— sole cause of death rule—applicable in involuntary manslaughter cases**

     The sole cause of death rule applies in involuntary manslaughter cases involving culpable negligence.

3. **Criminal Law § 91.2— pretrial publicity—denial of continuance proper**

     In a prosecution for involuntary manslaughter resulting from an automobile accident, the trial court did not err in denying defendant's motion for a continuance due to the publication of two lengthy newspaper articles dealing with traffic deaths related to alcohol use in the major Sunday newspaper the day before the trial began.

4. **Jury § 7.14— re-examination of juror after acceptance by State—proper**

     Where a prospective juror indicated during examination by defendant that she thought police officers would lie, the trial court did not err in allowing the State to re-examine and challenge the juror after the juror had been accepted by the State.

5. **Bills of Discovery § 6; Criminal Law § 87— providing State's witnesses—testimony by witness not named**

     The trial court did not err in allowing a State's witness to testify whose name had not been disclosed as a prospective witness prior to jury voir dire where the court questioned the jurors as to whether they knew the prospective witness, where defendant made no allegation of surprise at trial, and where the witness was the first physician to examine the victim at the scene of the accident.

State v. Mitchell

6. **Criminal Law § 87.4— allowing State to reopen examination of witness—no error**

 It is within the trial court's discretion to allow a witness to be recalled and to offer additional testimony.

7. **Criminal Law § 138— Fair Sentencing Act—erroneously consolidating offenses for judgment**

 The trial court erroneously consolidated for judgment the offenses of involuntary manslaughter and driving under the influence, second offense since the judge was required to make findings in aggravation and mitigation to support each sentence.

8. **Criminal Law § 138— wrongful consideration of victim's age as aggravating factor**

 In a prosecution for involuntary manslaughter where defendant drove an automobile through a store window and hit a young girl, the trial court incorrectly considered the girl's age as an aggravating factor since the underlying policy of the statutory aggravating factor is to discourage wrongdoers from taking advantage of a victim because of the victim's young age.

9. **Criminal Law § 138— Fair Sentencing Act—prior convictions—aggravating factors**

 In a prosecution for driving under the influence of intoxicating liquor, second offense and involuntary manslaughter, the trial court properly found as aggravating factors in imposing a sentence for involuntary manslaughter that the defendant had prior convictions for criminal offenses punishable by more than 60 days' confinement and that defendant had a long history of habitual and persistent disregard of the motor vehicle laws and rules since one factor related to prior convictions and the other related to administrative revocations, and since defendant's prior conviction for driving under the influence could properly be considered as an aggravating factor in sentencing defendant for involuntary manslaughter although it could not have been considered for the charge of driving under the influence of intoxicating liquor, second offense. G.S. 15A-1340.4(a)(1).

10. **Criminal Law § 138— Fair Sentencing Act—aggravating factors within legislative realm only**

 In a prosecution for involuntary manslaughter among other crimes, the trial court improperly considered as aggravating factors that defendant's sentence would deter others from committing the same offense and that a lesser sentence would unduly depreciate the seriousness of defendant's offense since those two factors fall within the exclusive realm of the Legislature.

APPEAL by defendant from *Albright, Judge.* Judgment entered 23 April 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 10 March 1983.

 Defendant was tried and convicted on charges of possession of a duplicate operator's license knowing the same to be revoked;

operating a motor vehicle while his operator's license was revoked, third offense; operating a motor vehicle while under the influence of intoxicating liquor, second offense; and involuntary manslaughter. He was sentenced to consecutive active prison terms of six months for possession of a revoked driver's license; of two years for driving while license revoked, third offense; and of seven years for involuntary manslaughter and driving under the influence of intoxicating liquor, second offense.

State presented evidence tending to show that on 10 December 1981, James Cason, Jr., and his three year old daughter, Kimberly Cason, were shopping in a Hop-In convenience store in Winston-Salem when a car driven by defendant crashed through one of the walls of the store. The little girl was buried under a pile of debris. After pulling defendant from the car, the girl's father backed the car away and dug his daughter out of the debris. The child was examined at the scene by emergency medical personnel and found to be easily arousable and talkative, though drowsy.

Upon arrival at Forsyth Memorial Hospital at 10:35 p.m., Kimberly was examined by Dr. Richard Fireman. Dr. Fireman viewed x-rays taken of Kimberly's head, pelvis, and right leg and detected only a possible foot fracture. Dr. Fireman discharged Kimberly into her parents' care, giving them the usual instructions for the care of a patient who has been knocked out in an accident.

Meanwhile, defendant was arrested and taken to the police station, where he was administered a breathalyzer test. Defendant's blood alcohol level was determined to be 0.19 per cent. Witnesses who observed defendant at the scene testified that defendant had the odor of alcohol about him and was unsteady.

The girl returned home and her parents awakened her every hour (more often than the doctor had instructed) and checked her pupils as instructed by Dr. Freeman. When they tried to awaken Kimberly at 6:00 a.m., Kimberly would not wake up. They discovered that her right pupil was enlarged. They rushed Kimberly back to the hospital at Dr. Fireman's direction.

Dr. Fireman re-examined the x-rays taken earlier and discovered that there was a skull fracture that he had not seen on

his first view. A neurosurgeon, Dr. Ernesto de la Torre, was called in.

Dr. de la Torre determined that Kimberly had a blood clot, an epidural hematoma, on the right side of her head pressing against her brain. Surgery to remove the clot was immediately performed on Kimberly. While Kimberly was in intensive care after the operation, she had a cardiac arrest. Despite resuscitative efforts, she died later that afternoon.

Dr. de la Torre testified that Kimberly's death was caused by a combination of factors: the injury to her head which caused the blood clot which produced bleeding which caused a lack of oxygen in the blood which caused the cardiac arrest. Although Kimberly's parents were Jehovah's Witnesses and would not allow a blood transfusion, he could not say that a transfusion would have made a difference.

Dr. Francis Vogel, a neuropathologist and professor at Duke Medical School Center, testified for defendant that he reviewed the case history of the treatment of Kimberly Cason. The medical reports indicated that Dr. Fireman observed a swelling above the girl's right ear in the area of the fracture when she was first brought in. The x-rays clearly showed a fracture above the right ear which should have been diagnosed. In an injury of that type, there is a substantial risk of a subdural hematoma which, if left untreated, will lead to death within 24 hours. The first few hours after an injury of this sort are critical. The standard medical procedure is to keep the patient under observation in the hospital and monitor the blood pressure and pulse rate every half-hour. An elevation in blood pressure accompanied by a slowing of the pulse rate is an indication of an epidural hematoma requiring immediate surgical removal. Based on these factors, it was his opinion that the sole cause of Kimberly's death was the failure of Dr. Fireman to promptly diagnose the skull fracture and the release and discharge of Kimberly into her parents' care.

*Attorney General Edmisten, by Associate Attorney David E. Broome, for the State.*

*Harper, Wood & Brown, by Gordon H. Brown, for defendant appellant.*

ARNOLD, Judge.

Defendant presents 18 questions for review, which can be classified into four categories: causation, trial procedure, sentencing and evidentiary matters.

## CAUSATION

Defendant first contends that there was insufficient evidence to support the submission of the case to the jury and to support the jury's verdict. Specifically, he argues that the overwhelming and uncontradicted evidence shows that Dr. Fireman's alleged negligence was the sole cause of Kimberly's death and that the State failed to prove that defendant's actions were a proximate cause of the girl's death. We disagree.

[1] To warrant a conviction in this case, the State must establish that the act of defendant was a proximate cause of the girl's death.

> [T]he act of the accused need not be the immediate cause of death. He is legally accountable if the direct cause is the natural result of the criminal act. [Citations omitted.] There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to the death. [Citations omitted.]

*State v. Cummings*, 301 N.C. 374, 377, 271 S.E. 2d 277, 279 (1980). (*Cummings* also involved a charge of involuntary manslaughter.) Negligent treatment by a physician will not excuse a wrongdoer unless the treatment is the sole cause of death. *State v. Jones*, 290 N.C. 292, 225 S.E. 2d 549 (1976). When an injury inflicted by an accused is a contributing cause of death, the defendant is criminally responsible therefor. *Id.*

The State did present sufficient evidence to show that defendant's actions were a proximate cause of the girl's death. Both Dr. Lou Stringer and Dr. de la Torre testified that the head injury Kimberly sustained in the accident contributed to and led to her death. The evidence, when compared with Dr. Vogel's testimony, was therefore contradictory as to the cause of death. The contradictions in the evidence were to be weighed by the jury, and the jury decided in favor of the State.

[2] Defendant argues that the sole cause of death rule applies only to intentional homicides and is inapplicable to a charge of involuntary manslaughter involving culpable negligence. For this reason, the law of negligence should be consulted and the trial court erred in refusing to instruct the jury that if they found that the intervening negligence of Dr. Fireman was a proximate cause of the girl's death (rather than the sole cause), then defendant was to be found not guilty.

We disagree and hold that the sole cause of death rule applies also in involuntary manslaughter cases involving culpable negligence. *See, State v. Cummings*, 301 N.C. 374, 271 S.E. 2d 277 (1980). One who drives a car while intoxicated endangers the lives of everyone who has the misfortune of being in his path. A car in the hands of an intoxicated driver becomes a deadly weapon. The situation is similar to a drunken man who unintentionally wounds someone while firing random shots from a gun. Negligent medical treatment (or some other intervening cause) should not excuse one accused of culpable negligence for a homicide when the injuries inflicted result in death unless it can be shown that the intervening event was the sole cause of the victim's death.

TRIAL PROCEDURE

[3] Defendant next contends that the court erred in denying his motion for a continuance due to the publication of two lengthy newspaper articles dealing with traffic deaths related to alcohol use in the major Sunday newspaper of Forsyth County the day before the trial began.

We reject this contention. As defendant concedes, a ruling on a motion for a continuance is ordinarily within the sound discretion of the trial court and will not be reviewed absent an abuse of discretion. *State v. Weimer*, 300 N.C. 642, 268 S.E. 2d 216 (1980). The articles did not mention defendant or the facts of this case but dealt with the general problem of drunken drivers. We therefore hold that there has been no showing of an abuse of discretion.

[4] Defendant next contends that the court erred in allowing the State to re-examine and challenge a juror after the juror had been accepted by the State.

We also reject this contention. G.S. 15A-1214(g) provides that the trial court may allow counsel to re-open consideration of a juror, even though counsel has once passed on the juror if "the juror has made an incorrect statement . . . or some other good reason exists . . . ." The trial court, in its discretion, may allow re-examination of a juror and excuse a juror upon challenge, either peremptory or for cause. *State v. Kirkman*, 293 N.C. 447, 238 S.E. 2d 456 (1977).

During the examination of a prospective juror by the defendant, the juror indicated that she could hold for the defendant, but that based on her experiences with police officers, she thought that they would lie. On re-examination, the juror admitted stating that she probably could not hold for the State in this case. The court therefore had good reason for exercising its discretion in reopening the examination.

[5] Defendant next contends that the court erred in allowing a State's witness, Dr. B. J. Fulton, to testify whose name had not been disclosed as a prospective witness prior to jury voir dire.

We cannot tell from the record whether a list of prospective State witnesses was furnished to defendant. Nonetheless, the State is not required to furnish such a list. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). If such a list is furnished, however, the court must look to see whether the district attorney acted in bad faith or whether the defendant will be prejudiced by allowing a witness to testify whose name did not appear on the list. *Id.* In *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980), involving a situation similar to the present case, the Supreme Court held that the trial court did not err in permitting two witnesses whose names had not been mentioned during jury voir dire to testify when the voir dire examination conducted by the court to determine bad faith showed that the jurors did not know either of the witnesses the State had failed to name, that the prosecutor did not act in bad faith and that defendant was not prejudiced thereby.

In the present case, the court questioned the jurors as to whether they knew the prospective witness. Upon receiving negative responses, the trial court, in its discretion, allowed the witness to testify. The court's discretion is not reviewable absent a showing of an abuse of discretion. *State v. Britt*, 291 N.C. 528,

231 S.E. 2d 644 (1977). Defendant made no allegation of surprise at trial. Moreover, the witness was the first physician to examine Kimberly at the scene of the accident. We conclude that there has been an insufficient showing of bad faith or prejudice.

[6] Defendant next contends that the court erred in allowing the State to reopen examination of James Cason, Jr., the girl's father. We reject this contention because it is within the trial court's discretion to allow a witness to be recalled and to offer additional testimony. *Hunter v. Sherron*, 176 N.C. 226, 97 S.E. 5 (1918); *State v. Adams*, 46 N.C. App. 57, 264 S.E. 2d 126, *disc. rev. denied*, 300 N.C. 559, 270 S.E. 2d 111 (1980). There has been no showing of an abuse of discretion.

SENTENCING

[7] At the outset we note the trial court erroneously consolidated for judgment the offenses of involuntary manslaughter and driving under the influence, second offense. As our Supreme Court recently held, "[I]n every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense." *State v. Ahearn*, 307 N.C. 584, 598, 300 S.E. 2d 689 (1983).

As statutory aggravating factors, the court found:

10.    The victim was very young, or very old, or mentally or physically infirm.

15.    The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement.

As additional aggravating factors, the court found:

16(a)    The defendant has a long history of habitual and persistent disregard of the motor vehicle laws and rules of the road resulting in at least ten previous license suspensions or revocations.

16(b)    A lesser sentence than that pronounced by the court will unduly depreciate the seriousness of the defendant's offense.

16(c)  The sentence pronounced by the court is necessary to deter others from committing the same offense.

16(d)  An additional charge for which separate punishment could have been imposed has been consolidated for judgment.

As mitigating factors, the court found that defendant has a good character and that defendant has a good employment record.

[8]  First, defendant urges that aggravating factor No. 10 should not have been used to increase the sentence imposed since he did not intend to harm the girl. She happened to be in his path and happened to be three years old. He argues that the underlying policy of the statutory aggravating factor is to discourage wrongdoers from taking advantage of a victim because of the victim's young or old age or infirmity. We agree that this was the policy of the statutory aggravating factor.

As this Court said in *State v. Gaynor*, 61 N.C. App. 128, 131, 300 S.E. 2d 260, 262 (1983): "Every aggravating factor, however, must be 'reasonably related to the purposes of sentencing' . . . . Under some circumstances the extreme old age or extreme youthfulness of the victim may increase the offender's culpability." For example, the age of a rape, kidnap, or mugging victim may increase the offender's culpability. In the present case, involving culpable negligence, defendant did not take advantage of the victim's tender age and it should not have been used as an aggravating factor to increase defendant's sentence.

Second, defendant contends that aggravating factors Nos. 15 and 16(a) were improperly considered because the same evidence was used to prove more than one factor in aggravation in violation of G.S. 15A-1340.4(a)(1). He also argues that evidence necessary to prove an element of the offense was used to prove an aggravating factor in violation of G.S. 15A-1340.4(a)(1) since he was charged with driving under the influence of intoxicating liquor, second offense and driving while license revoked, third offense. We disagree.

[9]  Aggravating factors Nos. 15 and 16(a) did not relate to the same evidence: Factor No. 15 related to prior convictions; Factor No. 16(a) related to administrative revocations and suspensions. Although defendant's prior conviction for driving under the in-

fluence could not have been considered since it was an element of the second offense charge, it was properly considered as an aggravating factor in sentencing defendant for involuntary manslaughter.

[10]   Third, defendant contends that the court erred in considering factors Nos. 16(b) and (c). We agree. In *State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983), the Supreme Court held that factors identical to these were erroneously considered as aggravating factors. As the court stated in *Chatman*: "These two factors fall within the exclusive realm of the legislature and were presumably considered in determining the presumptive sentence for this offense. While both factors serve as legitimate purposes for imposing an active sentence, neither may form the basis for increasing or decreasing a presumptive . . . ." *State v. Chatman* at 308 N.C. 180, 301 S.E. 2d 78.

Finally, defendant contends that it was error for the trial court to consider Factor No. 16(d) and to use the additional charge, which carried a maximum term of six months, to increase the sentence imposed for involuntary manslaughter from the presumptive term of three years to seven years. Because the offenses should not have been consolidated for judgment, this factor was erroneously considered. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

Since *Ahearn* compels us to find error in the trial court's findings in aggravation, the case must be remanded for a new sentencing hearing.

### EVIDENTIARY MATTERS

We have examined all ten of defendant's exceptions to the court's evidentiary rulings and find no prejudicial error.

For the foregoing reasons, we find no error in defendant's trial; however, the case must be remanded for resentencing in accordance with this opinion.

Remanded for resentencing.

Judges HILL and BECTON concur.