STATE OF NORTH CAROLINA v. CURLEY JACOBS and BRUCE LEE McMILLIAN

No. COA04-541-3

(Filed 19 January 2010)

**1. Sentencing— consolidated charges—most serious conviction—aggravating factors**

The trial court erred in sentencing defendant in the aggravated range for burglary when the court did not find any aggravating factors for burglary. As the trial court consolidated defendant's convictions for burglary, robbery, and impersonating a law enforcement officer, and the trial court was required to enter a sentence for the most serious offense of a set of consolidated offenses, the trial court was limited to sentencing defendant for the burglary conviction. The trial court's finding of factors aggravating defendant's conviction of impersonating a law enforcement officer was erroneous.

**2. Sentencing— aggravating factors—not harmless error**

In a prosecution for robbery with a dangerous weapon, impersonating a law enforcement officer, first-degree burglary, and second-degree kidnapping, the trial court's finding of two aggravating factors was not harmless error. Evidence of the aggravating factors was not so overwhelming nor uncontroverted that

any rational finder of fact would have found these aggravating factors beyond a reasonable doubt.

On remand from the North Carolina Supreme Court in 363 N.C. 576, 681 S.E.2d 339 (2009) (*per curiam*), vacating and remanding the decision of the Court of Appeals, *State v. Jacobs,* —— N.C. App. ——, 668 S.E.2d 346 (2008), for reconsideration of the issue of harmless error consistent with *State v. Blackwell,* 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied, Blackwell v. North Carolina,* 550 U.S. 948, 167 L. Ed. 2d 1114 (2007). Appeal by defendants from judgments entered 29 September 2003 by Judge Gary L. Locklear in Robeson County Superior Court. Originally heard in the Court of Appeals 3 March 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*C. Scott Holmes for defendant Curley Jacobs.*

BRYANT, Judge.

On 4 November 2002, defendant Curley Jacobs was indicted by the grand jury in Robeson County for robbery with a dangerous weapon, impersonating a law enforcement officer, first-degree burglary, and two counts of second-degree kidnapping. Defendant Jacobs was convicted of all charges by a jury on 29 September 2003. The trial court consolidated the two kidnapping offenses for sentencing and found four statutory aggravating factors pursuant to N.C. Gen. Stat. § 15A-1340.16: that Jacobs (I) induced others to participate in the commission of the offense, (II) joined with more than one other person in committing the offense and was not charged with conspiracy, (III) took advantage of a position of trust or confidence to commit the offense, and (IV) committed the offenses against a physically infirm victim. The trial court also consolidated the burglary, robbery and impersonating offenses ("the burglary offenses") and found the same four factors in aggravation of the offense of impersonating a law enforcement officer. The trial court then sentenced Jacobs in the aggravated range on each of the consolidated judgments, with the following sentences to run consecutively: 36 to 53 months for the two second-degree kidnapping counts and 95 to 123 months for the consolidated offenses of first-degree burglary, impersonating a law enforcement officer, and robbery with a dangerous weapon.

**STATE v. JACOBS**

[202 N.C. App. 71 (2010)]

This case comes before us on remand from the North Carolina Supreme Court for reconsideration of the issue of harmless error in the trial court's aggravation of Jacobs' sentences under *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied, Blackwell v. North Carolina*, 550 U.S. 948, 167 L. Ed. 2d 1114 (2007). For the reasons discussed below, we remand for resentencing.

### Facts

The evidence presented at trial tended to show the following: Early on the morning of 30 July 2002, defendants Jacobs and McMillian, along with William Robert Parker, Sharrone Brayboy, and George Allen Locklear drove to the home of Lee Otis Chavis in Shannon, North Carolina. Jacobs and McMillian remained in their vehicles, while Parker and Brayboy knocked on Chavis' door. When Chavis opened the door, Parker and Brayboy were standing on the front steps wearing "real thin blazers" bearing the letters "DEA" and "badge[s]" on their belts "like a detective would wear." In addition, Parker had a "chrome looking" handgun, while Brayboy carried a double-barreled shotgun. Parker and Brayboy told Chavis that they were looking for him, and Chavis asked to see the warrant. Brayboy responded that if Chavis did not open the door, he would be shot. Parker and Brayboy then entered the home, forced Chavis to the floor, and bound his hands behind his back with plastic handcuffs. Parker and Brayboy also brought Chavis' wife, Goldie, into the living room and bound her hands behind her back. Parker and Brayboy then searched the home and found Chavis' son, Benson Chavis, in a back bedroom. Parker and Brayboy also bound Benson's hands behind his back and brought him into the living room.

As Parker and Brayboy were "tearing up everything in the bedroom[,]" McMillian entered the residence. Parker and Brayboy called McMillian "Sarge," and they informed the Chavises that "they were going to need to talk to him to see what they were going to do" and that "there was [sic] some more guys across the road raiding a house[.]" After Parker, Brayboy, and McMillian left the home, the Chavises freed themselves and discovered that the three men had taken several firearms and approximately $1,700.00 in cash.

After leaving the Chavis residence, Parker, Brayboy, and McMillian joined Jacobs and Locklear, who were waiting outside. The five men left in two vehicles, one of which was an older model Chevrolet Caprice that had previously been used by the Robeson County Sheriff's Department. At a subsequent meeting at Locklear's

home, the five men divided Chavis' firearms and cash, as well as crystal methamphetamine also taken from the Chavis residence.

Robeson County Sheriff's Department Detective Reggie Strickland investigated the incident and subsequently arrested Brayboy on 6 August 2002. Following an interview with Brayboy, Detective Strickland arrested Parker, whose statements then led to Jacobs' arrest on 8 August 2002. McMillian turned himself in to law enforcement officials on 12 August 2002.

---

At sentencing, the trial court, lacking the benefit of subsequent federal and State case law, erred in finding the following four aggravating factors rather than submitting them to the jury: that defendant Jacobs (I) induced others to participate in the commission of the offense, (II) joined with more than one other person in committing the offense and was not charged with conspiracy, (III) took advantage of a position of trust or confidence to commit the offense, and (IV) committed the offenses against a physically infirm victim. On remand, we now consider whether the trial court's error was harmless. Because we conclude that the trial court's findings of the first (I) and fourth (IV) aggravating factors were not harmless, we remand for resentencing on the kidnapping offenses. In addition, because the trial court erred in making findings in aggravation and mitigation of impersonating a law enforcement officer rather than burglary, the most serious of the second set of consolidated offenses, we remand for resentencing on the burglary offenses as well. We begin our analysis with this set of offenses.

### The Consolidated Burglary Offenses

[1] "[I]n situations where a defendant is convicted of two or more offenses, the General Assembly has given the trial court discretion to consolidate the offenses into a single judgment." *State v. Tucker*, 357 N.C. 633, 636, 588 S.E.2d 853, 855 (2003), *cert. denied, Tucker v. Hardy*, 552 U.S. 1118, 169 L. Ed. 2d 762 (2008). Our State's Structured Sentencing Act provides, in pertinent part:

> The judgment shall contain a sentence disposition specified for the class of offense and prior record level of the most serious offense, and its minimum sentence of imprisonment shall be within the ranges specified for that class of offense and prior record level, unless applicable statutes require or authorize another minimum sentence of imprisonment.

N.C. Gen. Stat. § 15A-1340.15(b) (2001).

Thus, when separate offenses of different class levels are consolidated for judgment, the trial judge is required to enter a sentence for the conviction at the highest class. *Id.* "The trial court may, however, depart from the appropriate sentencing guidelines for the most serious offense upon finding that aggravating or mitigating factors exist." *Tucker*, 357 N.C. at 637, 588 S.E.2d at 855 (citing N.C.G.S. § 15A-1340.16(b)). "Since the trial judge is required by the Structured Sentencing Act to enter judgment on a sentence for the most serious offense in a consolidated judgment, aggravating factors applied to the sentence for a consolidated judgment will only apply to the most serious offense in that judgment." *Id.*

Here, our review of the record reveals a form entitled "Felony Judgment Findings of Aggravating and Mitigating Factors" ("the findings form") which lists the aggravating and mitigating factors found by the trial court. The findings form for case file number 02 CRS 055305 (the consolidated burglary, robbery and impersonating offenses) lists the offense to which aggravating and mitigating factors were applied as "Impersonate Law Enforcement (M)". In contrast, in file number 02 CRS 055302 (the kidnapping offenses), the trial court correctly listed the offense as second-degree kidnapping on the findings form. This suggests that the trial court made its findings of aggravating and mitigating factors in relation to the kidnapping and impersonating offenses, but not the burglary charge. In addition, the trial transcript reveals that during its oral discussion of the aggravators and mitigators, the trial court begins by stating that Jacobs had been found guilty of "the file numbers previously read into the record." The file numbers for all of the offenses had previously been read into the record. The trial court, however, did not state to which charges the findings applied and sometimes referred to aggravation of "this crime", suggesting that it was focused on only a single offense. Thus, it appears the trial court found aggravating and mitigating factors in the commission of the misdemeanor of impersonating a law enforcement officer, but made no findings in regard to burglary, the most serious offense of that set of consolidated offenses. Because N.C.G.S. § 15A-1340.15(b) requires that the judge enter sentence for the most serious of a set of offenses consolidated for judgment, the trial court was limited to sentencing Jacobs for the burglary charge, an offense for which it found no aggravating or mitigating factors. *See id.* Thus, the trial court erred in sentencing Jacobs in the aggravated range for burglary, when it did not find any aggravating factors in regard to that offense. We remand to the trial court for a new sentencing hearing for the con-

solidated offenses of first-degree burglary, robbery with a dangerous weapon, and impersonating a law enforcement officer.

Despite this conclusion, however, and in light of the prolonged procedural history of this case, we elect to conduct the required harmless error review of the four aggravating factors in relation to both the burglary and the kidnapping offenses. Because the same four aggravating factors were found for each set of consolidated offenses and were based on the same evidence, our harmless error analysis is the same for the burglary and kidnapping offenses.

### Harmless Error Review

**[2]** In *Blakely v. Washington*, 542 U.S. 296, 304-05, 159 L. Ed. 2d 403, 414-15 (2004), the United States Supreme Court held that a defendant's right to trial by jury under the Sixth Amendment to the United States Constitution is violated when a trial judge sentences a defendant beyond the statutory maximum based on aggravating factors found by the trial judge rather than the jury. Subsequently, the United States Supreme Court held that so-called *Blakely* error was subject to federal harmless error analysis. *Washington v. Recuenco*, 548 U.S. 212, 221-22, 165 L. Ed. 2d 466, 476-77 (2006). The North Carolina Supreme Court, applying *Blakely* and *Recuenco* to our State's Structured Sentencing Act, has agreed that *Blakely* error is subject to harmless error analysis. *Blackwell*, 361 N.C. at 42, 638 S.E.2d at 453.

In conducting harmless error review under *Blackwell*,

> we must determine from the record whether the evidence against the defendant was so "overwhelming" and "uncontroverted" that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt. The defendant may not avoid a conclusion that evidence of an aggravating factor is "uncontroverted" by merely raising an objection at trial. Instead, the defendant must bring forth facts contesting the omitted element, and must have raised evidence sufficient to support a contrary finding.

*Id.* at 49-50, 638 S.E.2d at 458 (internal citations and quotation marks omitted). Therefore, we now consider the evidence presented which might support or contest each of the four statutory aggravating factors found by the trial court.

*I*

We begin by considering whether the evidence that Jacobs "induced others to participate in the commission of the offense" was so overwhelming and uncontroverted that the jury would have found this aggravating factor beyond a reasonable doubt. N.C.G.S. § 15A-1340.16(d)(1) (2009). We conclude that the evidence on this issue was neither overwhelming nor uncontroverted.

During sentencing, the State suggested the evidence was that Jacobs "was a dominant player and planning player in this activity." However, the defense argued that Parker's testimony contradicted this contention. At trial, Parker testified that he planned the crimes: "I went to a house in Shannon. I was told a drug dealer stayed there, and I plotted it out and figured out what to do about robbing the man." Parker went on to say that "[n]obody really picked [the house,]" but that Parker had been there previously with Jacobs to buy drugs. Parker also stated that he had brought up the idea of robbery and questioned Jacobs about the house and the man who lived there. Parker was asked directly whether Jacobs planned the crime and replied: "I can't say that [Jacobs] planned it because it's not—it ain't like that. I took my part in it, I'm the one that had to do the planning for the thing. I ran the show." Finally, Parker stated that he got everyone ready to go and commit the crimes and that he "was in charge." The trial court acknowledged the conflict in the evidence when finding this aggravating factor: "Factor 1(a), induced others to participate, *in spite of the William Parker testimony*, such as that [sic]. It's undisputed that—well, now it's undisputed that Mr. Jacobs kind of picked out the house and such as that [sic], knew the folks." (Emphasis added).

Based on Parker's testimony, we cannot conclude that the evidence that Jacobs induced others to commit the crimes was "so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49, 638 S.E.2d at 458. The evidence could have supported a determination by the jury that Parker induced Jacobs and the others into committing these crimes and that Jacobs did no more than answer Parker's questions and go along with Parker's plan. Thus, the trial court's error in finding this factor was not harmless and Jacobs is entitled to a new sentencing hearing.

Where there is error in the finding of one aggravating factor, we need not consider any remaining aggravating factors, but rather must

**STATE v. JACOBS**

[202 N.C. App. 71 (2010)]

remand for resentencing. *State v. Hurt*, 361 N.C. 325, 332, 643 S.E.2d 915, 919 (2007). However, out of an abundance of caution and as a guide to the trial court, we will conduct harmless error analysis of each of the remaining three aggravating factors as well.

*II*

We next examine whether the evidence that Jacobs "joined with more than one other person in committing the offense and was not charged with committing a conspiracy" was so overwhelming and uncontroverted that the jury would have found this aggravating factor beyond a reasonable doubt. N.C.G.S. § 15A-1340.16(d)(2). We conclude that the evidence on this issue was overwhelming and uncontroverted.

Jacobs was not charged with conspiracy and all the testimony was that this crime involved Jacobs and four other men. The record indicates that while Jacobs' specific role in the crimes was contested, the evidence that he was involved at some level was overwhelming and would not support a contrary finding. *Blackwell*, 361 N.C. at 49-50, 638 S.E.2d at 458. Because we conclude that "a rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt[,]" the trial court's error in finding this aggravating factor was harmless. *Id.*

*III*

We also examine whether the evidence that Jacobs "took advantage of a position of trust" in committing these crimes was so overwhelming and uncontroverted that the jury would have found this aggravating factor beyond a reasonable doubt. N.C.G.S. § 15A-1340.16(d)(15). We conclude that the evidence on this issue was overwhelming and uncontroverted and, therefore, any error was harmless.

Jacobs has argued that the trial court erred in finding this aggravating factor because the evidence tended to show that he himself never dressed as a law enforcement officer or was even seen by the victims during the robbery and, thus, he could not have taken advantage of their trust. However, Jacobs was charged with impersonating a law enforcement officer under a theory of acting in concert and the jury convicted him of that charge. The evidence that Parker and Brayboy dressed as law enforcement officers in order to deceive the victims and win their confidence was uncontroverted and overwhelming. The trial court's error in finding this aggravating factor was harmless.

## IV

Finally, we consider whether the evidence that victim Chavis was "physically infirm" was so overwhelming and uncontroverted that the jury would have found this aggravating factor beyond a reasonable doubt. N.C.G.S. § 15A-1340.16(d)(11). We conclude that the evidence on this issue was not overwhelming and uncontroverted, and in turn, the trial court's error in making this finding was not harmless.

The policy supporting this statutory aggravating factor is to "discourage wrongdoers from taking advantage of a victim because of the victim's young or old age or infirmity." *State v. Mitchell*, 62 N.C. App. 21, 29, 302 S.E.2d 265, 270 (1983). Our courts have recognized two different ways in which a criminal may "take advantage" of the age of a victim.

First, he may "target" the victim because of the victim's age, knowing that his chances of success are greater where the victim is very young or very old. Or the defendant may take advantage of the victim's age during the actual commission of a crime against the person of the victim, or in the victim's presence, knowing that the victim, by reason of age, is unlikely to effectively intervene or defend himself.

*State v. Thompson*, 318 N.C. 395, 398, 348 S.E.2d 798, 800 (1986); *see also State v. Rios*, 322 N.C. 596, 599, 369 S.E.2d 576, 578 (1988); *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997). "Age should not be considered as an aggravating factor in sentencing unless it makes the defendant more blameworthy than he or she already is as a result of committing a violent crime against another person." *State v. Hines*, 314 N.C. 522, 525, 335 S.E.2d 6, 8 (1985). Although these cases focus on age, we believe their reasoning applies equally to physical infirmity, the vulnerability the trial court found here.

Chavis testified that he was on disability, had suffered two major heart attacks and undergone bypass surgery, and had diabetes and high blood pressure. Evidence also indicated that Jacobs had known Chavis for some time and according to Parker "knew everything about the man." It would be reasonable for a jury to believe that Jacobs knew of Chavis' poor health and infirmity. However, to properly find this aggravating factor, we must determine whether uncontroverted and overwhelming evidence supports the theory that Jacobs chose Chavis as a victim because of his infirmity or that Jacobs took advantage of Chavis' infirmity during the burglary and

kidnapping because he knew Chavis was unlikely to effectively intervene or defend himself.

There is no evidence, much less uncontroverted and overwhelming evidence, that Chavis' infirmity played any role in his selection as a victim. Parker testified that he chose the house to rob and did so because he believed a drug dealer lived there and that there would be drugs and cash on hand. Parker stated that Jacobs had been in Chavis' home a few days before the crimes and had seen money in Chavis' drawer. All of the evidence suggests that Chavis was chosen as a victim because he was believed to keep money and drugs in his home, not because he was infirm.

Nor was there evidence that anyone took advantage of Chavis' physical infirmity during the kidnapping and robbery. Testimony indicates that Chavis was treated no differently than the two other victims who were not alleged to be physically infirm. The decision to dress as law enforcement officers suggests that Jacobs and his criminal cohorts planned to rely on trickery rather than physical force to perpetrate their crimes against Chavis. Nothing about Chavis' physical infirmity made him more likely to fall for this masquerade.

Given the lack of evidence that Jacobs took advantage of Chavis' infirmity, we cannot conclude that a rational jury would have found this aggravating factor beyond a reasonable doubt. Thus, the trial court's error in finding this factor was not harmless.

### Conclusion

The trial court erred in making findings in mitigation and aggravation of the lesser offense of impersonating a law enforcement officer rather than burglary, the most serious of the consolidated offenses, and further erred in sentencing Jacobs in the aggravated range for the consolidated burglary offenses. The trial court also erred per *Blakely* in finding aggravating factors rather than submitting them to the jury. Because we cannot conclude that a rational fact-finder would have found aggravating factors I and IV beyond a reasonable doubt, the trial court's errors were not harmless, and Jacobs is entitled to a new sentencing hearing.

Remanded for a new sentencing hearing.

Judges STEPHENS and HUNTER, Robert N., concur.